2026 IL App (1st) 241048-U

No. 1-24-1048

Order filed August 7, 2026

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 20 CR 03753 |
| | ) | |
| DAVID Q. MARTIN, | ) | Honorable |
| | ) | Michele M. Pitman, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE PUCINSKI delivered the judgment of the court.
Justices Hyman and Gamrath concurred in the judgment.

**ORDER**

¶ 1     *Held*:  The evidence was sufficient to prove defendant guilty of leaving the scene of a motor vehicle accident involving death. The trial court reasonably rejected defendant's claim that necessity excused his failure to comply with the reporting requirements incorporated in section 11-401(a).

¶ 2     Following a bench trial, defendant David Q. Martin was convicted of one count of leaving the scene of a motor vehicle accident involving death pursuant to section 11-401(a) of the Vehicle Code (625 ILCS 5/11-401(a) (West 2018)). He was sentenced to two years in prison. On appeal,

defendant contends that the State failed to disprove that his flight was justified by the affirmative defense of necessity. For the following reasons, we affirm.

¶ 3    Defendant was charged with two counts of leaving the scene of a motor vehicle accident involving death. Both counts alleged that, on November 9, 2019, defendant, "the driver of a motor vehicle involved in a motor vehicle accident resulting in the death of Laval White, knowingly failed to immediately stop" at the scene "or as close thereto as possible" and failed to "remain at the scene *** to give information and render aid." 625 ILCS 5/11-401(a) (West 2018). Count I, but not count II, additionally alleged that defendant "failed to give" his name and address, the vehicle's owner's name and registration number, and the names of the occupants, and that he "failed to report" the accident at a police station or sheriff's office near the scene within a half-hour of the accident. *Id.* § 11-401(b) (requiring that a person who has failed to stop or failed to comply with section 11-401(a) must report such information "in no case later than one-half hour after such motor vehicle accident.").

¶ 4    Defendant filed a discovery answer disclosing a necessity defense.

¶ 5    At trial, the State presented evidence that, about 3 a.m. on November 9, 2019, defendant was driving a green pickup truck with his girlfriend, Syidah Morris, that struck a white vehicle driven by White at the intersection of 150th Street and Hoyne Avenue in Harvey, Illinois. White died as a result. The collision occurred after defendant failed to obey a stop sign at the intersection. Defendant and Morris were not at the scene when police arrived. Defendant did not go to the Harvey police station to report the collision until November 13, 2019.

¶ 6    Harvey police officer Frederick Washington testified that he was the first officer on the scene, arriving about four minutes after being dispatched. He observed a white vehicle in the bushes in front of a house and a green pickup truck with heavy front-end damage in the driveway,

but he did not see anyone fleeing or walking away. At least 10 "frantic" people, who were "becoming hostile" and did not respond to Washington's commands, surrounded the white vehicle. Washington saw an unresponsive person in the white vehicle's driver's seat, but no one was inside or near the green truck.

¶ 7    Harvey police detective Jeff Crocker testified that he learned the green truck had been occupied by defendant, who was its registered owner, and Morris. Other detectives obtained video of the collision from a nearby home. The parties stipulated to the foundation for the video, which was entered into evidence and is in the record on appeal.

¶ 8    This court has viewed the collision video, which depicts a white vehicle approach an intersection; then, a pickup truck approaches on the cross-street. Neither vehicle stops. The vehicles collide and careen off-screen. Moments after the collision, another vehicle arrives at the intersection from the same direction as the white vehicle and stops.

¶ 9    On cross-examination, Crocker testified that on the day of the accident, he went to defendant's address and left a business card. That same day, defendant's counsel telephoned Crocker to arrange for defendant to go to the Harvey police station "on a later date," which he did.

¶ 10    Illinois state trooper Tenisha Jones testified that she investigated the collision and processed a green pickup truck. Both the driver's and front passenger's airbags were deployed. Jones collected items from the interior, including keys in the ignition and a cellphone.

¶ 11    The parties stipulated that defendant's DNA was on the driver's airbag and Morris's DNA was on the front passenger's airbag.

¶ 12    The defense called Zyphorah Hale, who testified that she had a view of the intersection from her bedroom window. At about 3 a.m. on November 9, 2019, she heard a "big boom," looked out her bedroom window, and saw that there had been a collision involving a white vehicle. After

calling the police, Hale went outside and saw a small sedan arrive. Six to eight men exited the sedan and appeared to be running after someone; their demeanor "wasn't good." Hale also noticed that a Black man in his 20s "was running from something." When the police arrived, that same group was crowded around the white vehicle and was "rude to the police," who "had to tell them to get back off the car."

¶ 13    On cross-examination, Hale testified that she did not know if the man being chased was the driver of the green truck. The group chasing the man did not pursue him down the alley where he fled but stopped at the white vehicle. Hale did not tell the police about the man who fled. Hale remained outside at the collision scene for at least an hour and did not see the person who fled return to the scene.

¶ 14    Defendant testified that, early on November 9, 2019, he was in a vehicle accident in which his truck collided with a white vehicle. He exited his truck to check on the occupants of the other vehicle, but he never got there because six to eight people near the vehicle "threatened" him and tried to "attack" him. Some of the people chased him, so he fled, screaming for help and not looking back.

¶ 15    On cross-examination, defendant acknowledged that he was driving his green truck at the time of the collision and Morris, his girlfriend, was also in the truck. He did not stop at the stop sign just before colliding with the white vehicle. After the collision, defendant saw men near the white vehicle, so he told Morris to wait in the truck while he went to the white vehicle to check on its occupants. He initially thought the other men had exited the white vehicle; he did not know there was an injured victim still inside the car. The five or six men were "aggressive" and made threatening gestures and comments. Defendant "felt like whatever they felt about who was in the car, they wanted to do something to [him] about it." They ran towards defendant, so he fled down

a nearby alley. Defendant believed it was "not a good area," he had left his phone in his truck, and he did not feel safe knocking on a residential door at 3 a.m. to ask to call 911. Instead, he walked about five miles to Country Club Hills, where he lived.

¶ 16    After discussing the collision with his mother, defendant went to the Country Club Hills police station later that morning at around 7 or 7:30 a.m. He told the front desk clerk that he had been in a vehicle collision, but the clerk informed him that he needed to report the collision to the police in Harvey where it occurred. Someone standing behind the clerk's desk gave defendant a Country Club Hills police department business card that, in court, defense counsel identified as the business card of Sergeant Detective D. Chambliss. Defendant then called his attorney, who "was already speaking" with the Harvey police and told defendant they would call him when they were ready to see him. Defendant testified that he went the Harvey police station on the day of the collision but did not enter. He was not injured in the collision and did not go to the hospital.

¶ 17    The State called Chambliss, who testified in rebuttal that he was promoted to sergeant detective in 2021 and was a detective in 2019. Chambliss did not meet with defendant or provide defendant his contact information on November 9, 2019. Chambliss identified his sergeant business card, admitted into evidence as People's Exhibit No. 66, as his current card and explained that he gave defendant that card in February 2022. The business card Chambliss used in 2019 did not bear the title of sergeant. Chambliss searched Country Club Hills police reports back to 2017 and found no record of any traffic accident report with defendant's name.

¶ 18    On cross-examination, Chambliss acknowledged not knowing if the police desk clerk met defendant on November 9, 2019. However, it was the practice of the Country Club Hills police that, if someone comes to the desk clerk to report an incident in a different jurisdiction, a report would be prepared and submitted to the other jurisdiction.

¶ 19    The record on appeal includes the business card of D. Chambliss, sergeant detective with the Country Club Hills police, depicting the badge of a police sergeant.

¶ 20    During closing arguments, defense counsel argued that "the law allows for a necessity defense if a defendant acted under the compulsion or threat or menace," and that the evidence "established a necessity defense" because defendant "left the scene because he was in fear of his life." Counsel also argued that, while "not within 30 minutes, but within a short amount of time all the information was supplied" when counsel "contacted law enforcement" on defendant's behalf on the day of the collision and "met [defendant's] obligation." According to counsel, the State's position that defendant "never contacted the police on the 9th, the 10th, the 11th" was "false" because defendant "did it through" counsel.

¶ 21    The State responded that defendant did not report the collision after it occurred, but instead "claim[ed] that he went to Country Club Hills four and a half hours [later] to attempt to report" it. The State argued that defendant bore the duty of reporting and his actions "don't show any intent in trying to report."

¶ 22    The trial court found defendant guilty of count II for leaving the scene of a motor vehicle accident involving death, pursuant to section 11-401(a) of the Vehicle Code, which incorporates the related duties of section 11-403. 625 ILCS 5/11-401(a) (West 2018) (requiring a person involved in a crash resulting in personal injury or death to remain at the scene "until the requirements of section 11-403 have been fulfilled."); *id*. § 11-403 (requiring a driver in a motor vehicle crash to provide specified information and to render "reasonable assistance" to any injured person.)

¶ 23    The court noted it was undisputed that defendant caused White's death, but the primary issue was "defendant's duty to report and render aid." Although it found Hale credible, the court

did not believe defendant's testimony that he approached the other vehicle to check on its occupants, or his claim that he went to the Country Club Hills police station later that morning (November 9) and received a business card from Chambliss. Rather, the trial court found that defendant did not report the accident until November 13th, when Detective Crocker saw him at the Harvey police station. Further, it found that defendant "never complied with" section 11-403's requirement that, "if none of the persons entitled to information" under the statute are in "a condition to receive and understand such information," the driver must proceed to report the crash at the nearest police station. *Id.* ("If none of the persons entitled to information pursuant to this Section is in condition to receive and understand such information and no police officer is present, such driver after rendering reasonable assistance shall forthwith report such motor vehicle crash at the nearest office of a duly authorized police authority, disclosing the information required by this Section.")

¶ 24     However, the court acquitted defendant of count I, premised on section 11-401(b), finding that the State did not prove beyond a reasonable doubt "the half hour time frame" requirement for that charge. See 625 ILCS 5/11-401(b) (requiring that a person who has failed to stop or failed to comply with section 11-401(a) must report the accident "in no case later than one-half hour after such motor vehicle crash."). According to the court, the evidence was unclear when defendant arrived home from the scene of the accident and, "in [defendant's] mind," was away "from all danger in this matter." Thus, with respect to count I, it found the State "has not been able to meet their burden of proof * * * with regards to the final element * * * that the defendant had to report this no later than one half hour of said motor-vehicle accident."

¶ 25     Defendant filed a posttrial motion challenging the sufficiency of the evidence. The court denied the motion, explaining that the State proved beyond a reasonable doubt that defendant did

not render aid and failed to remain at the scene "until the requirements of 11-403 had been fulfilled." The court also noted that the offense for which he was convicted (count II) did not include the half-hour time frame that was an element of the offense for which he was acquitted (count I).

¶ 26    The court sentenced defendant to two years in prison.

¶ 27    On appeal, defendant contends that the State failed to prove beyond a reasonable doubt that his actions following the collision were not justified by the affirmative defense of necessity.

¶ 28    Defendant claims our review should be *de novo* because he is not challenging the trial court's factual or credibility determinations. However, defendant argued below, and argues here, that he fulfilled his statutory duty to report the collision at a police station when no one at the scene could take his information. In particular, while defendant argued at trial for a necessity defense, he also argued that he "met his obligation" because "not within 30 minutes, but within a short amount of time[,] all the information was supplied." In his brief, defendant argues that his counsel "immediately contacted the Harvey Police Department to provide the information required by section 11-403 on his behalf." Therefore, according to defendant, he "did, in fact, satisfy section 11-403's reporting requirements," such that he could not be convicted for violating section 11-401(a), which incorporates section 11-403. 625 ILCS 11-401(a) (West 2018) (requiring drivers involved in a motor vehicle crash resulting in personal injury or death to remain at the scene "until the requirements of Section 11-403 have been fulfilled.")

¶ 29    The trial court rejected that proposition. Thus, contrary to defendant's assertion, his appeal challenges factual or credibility determinations and does not present a question of law warranting *de novo* review. See *People v. Calloway*, 2019 IL App (1st) 160983, ¶ 33 (disputed factual question is not reviewed *de novo*).

¶ 30    When the sufficiency of trial evidence is at issue, we must determine whether, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *People v. Johnson*, 2026 IL 131337, ¶ 59. This standard requires that we draw all reasonable inferences from the evidence in the State's favor. *People v. Harvey*, 2024 IL 129357, ¶ 19. It is the trier of fact's responsibility to weigh, resolve conflicts in, and draw reasonable inferences from the evidence. *Johnson*, 2026 IL 131337, ¶ 59. We do not retry a defendant or substitute our judgment for that of the trier of fact regarding witness credibility or the weight of the evidence. *Id.*

¶ 31    A trier of fact is not required to disregard inferences that flow normally from the evidence, nor seek all possible explanations consistent with innocence and elevate them to reasonable doubt. *People v. Galarza*, 2023 IL 127678, ¶ 25. A trier of fact need not be satisfied beyond a reasonable doubt as to each link in the chain of circumstances if the evidence as a whole satisfies the trier of fact beyond a reasonable doubt of the defendant's guilt. *Id.* ¶ 27. We will reverse a conviction only if the evidence is so unreasonable, improbable, or unsatisfactory that a reasonable doubt of the defendant's guilt remains. *Id.* ¶ 26.

¶ 32    Defendant was convicted on a single count of leaving the scene of a motor vehicle accident involving death under section 11-401(a) of the Vehicle Code (625 ILCS 5/11-401(a) (West 2018)). Section 11-401(a) states:

> "The driver of any vehicle involved in a motor vehicle accident resulting in personal injury to or death of any person shall immediately stop such vehicle at the scene of such accident, or as close thereto as possible and shall then forthwith return to, and in

every event shall remain at the scene of the accident until the requirements of Section 11-403 have been fulfilled." *Id*.

That is, section 11-401(a) incorporates the requirements of section 11-403.

¶ 33    In turn, section 11-403 requires that any driver involved a motor vehicle crash resulting in injury or death must "give the driver's name, address, registration number and owner of the vehicle the driver is operating" "to the person struck or the driver or occupant of or person attending any vehicle collided with," and to "render to any person injured in such crash reasonable assistance." *Id*. § 11-403. Section 11-403 further provides that, "[i]f none of the persons entitled to information pursuant to this Section is in condition to receive and understand such information and no police officer is present," the driver "shall forthwith report such motor vehicle accident at the nearest office of a duly authorized police authority, disclosing the information required by this Section." *Id.* "It is the responsibility of the driver to furnish the required information to the police, and that responsibility does not change merely because the police obtained the required information as a result of their own investigation." *People v. Moreno*, 2015 IL App (2d) 130581, ¶ 26.

¶ 34    Viewing the evidence in the light most favorable to the State, as we must, we find that a rational trier of fact could find the State proved beyond a reasonable doubt all the elements of the offense of leaving the scene of a motor vehicle accident, pursuant to section 11-401(a) and the requirements of section 11-403 incorporated therein. Specifically, the trial evidence supported findings that defendant was the driver in the motor vehicle accident that resulted in White's death on November 9, 2019, and that defendant failed to remain at the scene. Further, the court reasonably found that he failed to comply with section 11-403 by failing to render any reasonable assistance, failing to report the required information to anyone at the scene, and that he otherwise

failed to "forthwith report the accident" at a police station. See 625 ILCS 5/11-401(a), 11-403 (West 2018).

¶ 35    Defendant's testimony that he went to the Country Club Hills police station to report the collision on the day it occurred was refuted by Sergeant Chambliss, and the trial court reasonably rejected that claim as incredible. We acknowledge that both State and defense witnesses established that defendant's counsel contacted the Harvey police to arrange for defendant to go to the police station, but the evidence was that defendant did not personally go to the Harvey police station for several days. Although we generally recognize that in many circumstances, a represented person can communicate to law enforcement through their counsel, the statute in this instance instructs that if "no police officer is present" at the scene, the "driver" involved in a fatal accident "shall forthwith report such motor vehicle crash at the nearest office of a duly authorized police authority." 625 ILCS 5/11-403 (West 2018). Under the language of section 11-403, the driver's statutory obligation is to report the crash at the nearest police authority. Defendant cites no authority suggesting that obligation may be satisfied solely through counsel. Thus, the evidence supports the trial court's finding that defendant did not forthwith report the collision at a police station until days after the collision.

¶ 36    We do not find the evidence so unreasonable, improbable, or unsatisfactory that there is reasonable doubt of defendant's guilt of leaving the scene of a motor vehicle accident involving death.

¶ 37    We turn to address defendant's reliance on a necessity defense. That is, he contends that his flight from the crash scene, without rendering aid and providing the statutorily required information, was necessary "to escape the unruly and threatening mob that he feared would harm him."

¶ 38    Section 7-13 of the Criminal Code of 2012 (720 ILCS 5/7-13 (West 2018)) sets forth the necessity defense, whereby "[c]onduct which would otherwise be an offense is justifiable by reason of necessity if" the defendant "was without blame in occasioning or developing the situation and reasonably believed such conduct was necessary to avoid a public or private injury greater than the injury which might reasonably result from his own conduct." As an affirmative defense, "unless the State's evidence raises the issue involving [necessity], the defendant, to raise the issue, must present some evidence" of necessity, and then "the State must sustain the burden of proving the defendant guilty beyond a reasonable doubt as to [necessity] together with all the other elements of the offense." *Id*. § 3-2.

¶ 39    Even if defendant presented enough evidence to raise the affirmative defense of necessity, a rational trier of fact could conclude beyond a reasonable doubt that the defense did not excuse his conduct. Necessity excuses only the conduct reasonably required to avoid the threatened harm. See *People v. Dworzanski*, 220 Ill. App. 3d 185, 192 (1991) (Trial court could have found that necessity defense failed where defendant "had acted beyond the scope of what was reasonably necessary to protect [her child]."). Here, the trial court could reasonably find that the crowd justified defendant's immediate departure from the crash scene.

¶ 40    However, once defendant reached safety, although the danger that prompted his flight had ended, his statutory reporting obligations had not. Section 11-403 required him to provide the information mandated by the statute, either at the scene of the accident or "forthwith * * * at the nearest office of a duly authorized police authority." 625 ILCS 5/11-403 (West 2018). The court was free to reject defendant's testimony that he reported the collision at the Country Club Hills police station and instead find that he failed to report the collision as required by law. On this

record, the evidence was sufficient to permit the court to conclude that necessity excused only defendant's initial flight, but not his failure to comply with section 11-403.

¶ 41 Finally, we address defendant's claim that "the circuit court's finding of guilt on Count 2 was incompatible with its findings when acquitting him of Count 1." In particular, he claims that the court found a defense of necessity as to count I and contradicted itself by not finding a defense of necessity as to count II. We disagree; the record shows the court simply found that the State did not prove an element of count I that was not required for count II.

¶ 42 As noted, the statute at issue in count II for which defendant was found guilty, section 11-401(a), requires a driver in a motor vehicle accident that causes death to remain at the scene to render aid and provide information to "the driver or occupant of or person attending any vehicle collided with," except that the driver must report the accident forthwith at a police station if no one at the scene entitled to that information is in a condition to receive it. 625 ILCS 5/11-401(a), 11-403 (West 2018). Here, evidence established that White was unresponsive at the scene. Therefore, section 11-401(a) (which incorporates section 11-403) required defendant to provide the requisite information forthwith at a police station.

¶ 43 On the other hand, section 11-401(b), underlying count I for which the court found defendant not guilty, requires reporting a motor vehicle accident at a police station "as soon as possible but in no case later than one-half hour after such motor vehicle accident." *Id*. § 11-401(b). The half-hour requirement is an element of the offense in section 11-401(b), but not an element of the offense in section 11-401(a). See *Moreno*, 2015 IL App (2d) 130581, ¶ 23. The trial court, as finder of fact, found that the State failed to prove the half-hour element of section 11-401(b) beyond a reasonable doubt.

¶ 44    Having acquitted defendant of an offense under section 11-401(b) because an element of the offense was not proven, the court did not need to reach the question of whether his commission of that offense was justified by reason of necessity. The court explained this in denying defendant's posttrial motion, stating that section 11-401(a), the basis for the count II conviction, "does not require the additional half hour time frame which is why [it] found the defendant not guilty of count one." Thus, nothing about the court's determinations on the two charged offenses was contradictory or incompatible.

¶ 45    For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 46    Affirmed.